[Civ. No. 22991. Second Dist., Div. One. Aug. 1, 1958.]

MARTIN KUX et al., Respondents, v. CAL-WEST LUMBER CORPORATION (a Corporation), Appellant.

Irving Glovin for Appellant.

Martineau & Martineau for Respondents.

FOURT, J.—This is an appeal from a judgment in favor of plaintiffs, who were copartners engaged in selling lumber produced in the Pacific Northwest in the States of Oregon, California, and elsewhere (hereinafter referred to as "Sellers"), and against the defendant corporation (hereinafter referred to as "Purchaser").

The action was pleaded in the common counts of goods sold and delivered to Purchaser at Los Angeles, California, open book account and account stated for the total contract price of $24,283.44 for 300,000 board feet of lumber. Simultaneously with the filing of the complaint, Sellers attached Purchaser's bank account.

Purchaser demurred to the complaint and moved for a discharge of the writ of attachment on the ground that the controversy involved a written contract made and payable in the State of Oregon. The demurrer was overruled, and the

complaint was amended to indicate that the contract sued upon was oral.

The Purchaser denied any oral agreement, alleged payment in excess of all claims, and cross-complained for damages in the sum of $4,180.96 for breach of a written contract made in Oregon.

By a written pretrial stipulation, it was clarified that 94,512 board feet of lumber contained in the order were not delivered by Sellers to Los Angeles and made available to Purchaser within the proper time, and that there was a dispute concerning the standards of quality, quantity, proper distribution and delivery time as to the 205,488 board feet of lumber delivered to and received by Purchaser.

It was further stipulated as follows:

"X. That on or about June 4, 1956 or June 5, 1956 defendant ordered 300,000 board feet of 2 x 6 tongue and groove, center matched, green Douglas Fir, utility and better; that on or about June 5, 1956 plaintiffs' agent at Los Angeles, California, D. O. Cook, prepared and mailed to defendant plaintiffs'. confirmation, being plaintiffs' No. 1 for identification; that on or about June 11, 1956 plaintiffs at Eugene, Oregon mailed to defendant at Los Angeles, plaintiffs' form of Sales Agreement, being defendant's No. A for identification; that said Sales Agreement was never executed by defendant; that said Sales Agreement sets forth the terms of said order; that on or about June and July, 1956 plaintiffs sold and delivered to defendant at Los Angeles, California, at defendant's special instance and request, 197,084 board feet of 2 x 6 tongue and groove, center matched, green Douglas Fir, at the agreed price of $79.50 per thousand board feet for lumber shipped by water; $84.00 per thousand board feet for lumber shipped by mill's truck and trailer, plus the cost of wharfage, handling and taxes, to wit, plaintiffs delivered to defendant the following:

"A. On or about June 12, 1956 and June 13, 1956, 30,536 feet as set forth on Invoice No. 6-1094;

"B. On or about June 12, 1956, 21,164 feet as set forth on Invoice No. 6-1092;

"C. On or about June 14, 1956, 36,540 feet as set forth on Invoice No. 6-1095;

"D. On or about June 17, 1956, 20,082 feet as set forth on Invoice No. 6-1186;

"E. On or about July 3-5-6, 1956, 67,148 feet as set forth on Invoice No. 6-1201; and

"F. On or about July 9, 1956, 21,614 feet as set forth on Invoice No. 7-1354;

"that the balance of said order was not taken into the possession of or used by defendant; that defendant delivered to plaintiff defendant's check No. 23821 dated August 9, 1956 in the amount of $1,765.51 in favor of 'Schaecher-Kux Lumber Co. & Douglas County State Bank,' bearing a notation on the face thereof of 'Payment in Full, Invoice #6 1092,' and defendant's check No. 23822 dated August 9, 1956 in the amount of $11,910.15 in favor of 'Schaecher-Kux Lumber Co. & 1st National Bank of Portland,' bearing notation on the face thereof of 'Payment in Full #6-1094, 6-1095, 6-1186, 7-1354 and 6-1201,' both of which contained restrictive endorsements and both of which plaintiffs did not cash."

Findings of fact made by the trial court include the following:

"5. D. O. Cook was at all times pertinent to this action the Southern California agent of plaintiffs Martin Kux and Raymund J. Schaecher, doing business as Schaecher-Kux Lumber Company, and, as such, said D. O. Cook had authority at Los Angeles to contract for the sale of and sell the lumber which is the subject of the herein litigation;

"6. The grades of lumber used in residential construction are as follows:

"No. 1 Construction
"No. 2 Standard
"No. 3 Utility
"No. 4 Economy

"of which No. 1 Construction is the best quality of those mentioned, and the grade 'Utility and Better' is an intermediate grade better than No. 3 Utility but not as good as No. 2 Standard;

". . . . . . . . . . .

"8. On June 5, 1956, defendant Cal-West Lumber Corp. ordered from plaintiffs at Los Angeles, California 300,000 board feet of 2 x 6 green Douglas Fir S2S Center Matched, grade No. 3 Utility and Better without white speck, dry rot or grub holes, of specified lengths, delivery to be completed by July 9, 1956, at a price of Seventy-nine and 50/100 Dollars ($79.50) per thousand board feet AST Los Angeles Harbor, California, shipment by water, and a price of Eighty-four Dollars ($84.00) per thousand board feet, shipment by truck and trailer loads;

". . . . . . . . . . . . .

"11. On June 12, 1956 and June 13, 1956, pursuant to said order and as a part thereof, plaintiffs sold and delivered to defendant Cal-West Lumber Corp. at Los Angeles, California, 35,760 board feet of 2x6 Douglas Fir at the agreed price . . . but said defendant failed to pick up, at the dock, 8,404 board feet of Douglas Fir, and plaintiffs now hold this merchandise for said defendant;

". . . . . . . . . . .

"16. The total amount of said invoices is $16,713.04;

"17. Defendant Cal-West Lumber Corp., upon inspection of the lumber covered by invoice 6-1094, rejected as below quality 7,534 board feet thereof with respect to which the credit due defendant is Six Hundred Sixteen and 06/100 Dollars ($616.06) for lumber at Seventy-nine and 50/100 Dollars ($79.50) per thousand board feet, wharfage and handling Two and 50/100 Dollars ($2.50) per thousand board feet, and drayage Two Dollars ($2.00) per thousand board feet; and said defendant now holds for plaintiffs said 7,534 board feet of 2x6 Douglas Fir obtained by it from merchandise shipped under invoice 6-1094;

"18. Defendant Cal-West Lumber Corp., upon inspection of the lumber covered by invoice 6-1201, rejected as below quality 9,690 board feet with respect to which the credit due defendant is Eight Hundred Thirteen and 96/100 Dollars ($813.96) made up of lumber at Seventy-nine and 50/100 Dollars ($79.50) per thousand, wharfage and handling Two and 50/100 Dollars ($2.50) per thousand board feet, and drayage Two Dollars ($2.00) per thousand board feet; and said defendant now holds for plaintiffs said 9,690 board feet of 2x6 Douglas Fir obtained by it from merchandise shipped under invoice 6-1201;

"19. The total amount of credits due defendant Cal-West Lumber Corp. amounts to One Thousand Four Hundred Thirty and 02/100 Dollars ($1,430.02);

"20. Except for lumber covered by the credits set forth in paragraphs 17, 18 and 19, all lumber sold and delivered by plaintiffs to defendant Cal-West Lumber Corp. complied with said defendant's order in all respects as to quality, date of delivery, the lengths of material delivered, and all other specifications;

"21. The total number of board feet of Douglas Fir shipped by plaintiffs to defendant Cal-West Lumber Corp. pursuant to said order was 180,694;

". . . . . . . . . . . .

"24. Plaintiffs caused to be manufactured, pursuant to said order, and for the account of defendant Cal-West Lumber Corp., sufficient lumber to have fulfilled the balance of 119,306 board feet required to make an overall total of 300,000 board feet, but plaintiffs did not deliver said 119,306 board feet to said defendant because of said defendant's stop delivery order of June 22, 1956; that plaintiffs were at all times ready, willing and able to deliver said 119,306 board feet to said defendant but did not do so due to defendant's stop delivery order of June 22, 1956;"

From the findings of fact, the court made certain conclusions of law, including the following:

"3. That plaintiffs now hold for the account of and shall deliver to defendant Cal-West Lumber Corp. 8,404 board feet of 2 x 6 Douglas Fir covered by Invoice 6-1094;

"4. That defendant Cal-West Lumber Corp. now holds for the account of and shall deliver to plaintiffs 17,224 board feet of 2 x 6 Douglas Fir covered by invoices 6-1094 and 6-1201;

"5. That plaintiffs are entitled to judgment against defendant Cal-West Lumber Corp. in the amount of Fifteen Thousand Two Hundred Eighty-three and 02/100 Dollars ($15,-283.02);"

It is contended on appeal that the trial court erred in the following particulars:

"I. The Court failed to make specific findings on material issues (written contract and release of attachment); and

"II. The Court failed to make specific findings on particular affirmative defenses and made inadequate awards on the cross-complaint."

We are of the opinion that Finding Number 8 of the trial court set forth hereinabove is explicit and specific as to the order placed, and we are further of the opinion that the enumeration in the findings of the various specific sales and deliveries sufficiently negates by necessary inference the existence of a written contract in Oregon. (See *Wood* v. *Girot*, 102 Cal.App. 160, 165 [282 P. 981]; *Metcalf* v. *Hill*, 97 Cal.App. 597, 599 [275 P. 994]; Witkin, California Procedure (1954), vol. 2, p. 1850.)

Appellant asserts that "[t]o establish an oral contract, it was necessary to find authority in Mr. Cook to enter into a binding contract." Appellant admits the trial court did so find, but then appellant contends "[t]his finding is not supported by the evidence."

The reporter's transcript of the proceedings has been reviewed in detail, and in our opinion there was substantial evidence to support each of the findings of the trial court, including Finding Number 5 with respect to the authority of Sellers' agent in Los Angeles. The instant case is clearly distinguishable from the case cited by appellant as *Peronio* v. *Everett-Johnson Lumber Co.* (1941), 53 Cal.App.2d 786 [200 P.2d 837], which case is properly cited as *Beronio* v. *Everett-Johnson Lumber Co.* (1921), 53 Cal.App. 786 [200 P. 837]. In the Beronio case a San Francisco soliciting agent of a Portland lumber company called upon the prospective purchaser in San Francisco relative to the purchase of certain lumber. An oral agreement was reached as to the quantity, price and terms of sale. The record before the court did not indicate any agreement as to a definite arrangement upon terms of payment. The order was sent to the lumber company, which refused to accept it unless the prospective purchaser would agree to honor a sight draft in payment of the lumber, which the prospective purchaser refused to do. Suit was instituted for failure to deliver, which resulted in a judgment for the purchaser, which was reversed on appeal on the basis that the soliciting agent under the stated facts had no power to bind the principal.

By contrast in the instant case there had been many prior dealings between the parties over a period of years, and there were a series of oral conversations during the spring of 1956 by and between Sellers' exclusive sales agent in Los Angeles, who was in daily contact with his home office in Eugene, Oregon, and the president and certain employees of Purchaser relative to bids to be placed by Purchaser for a residential subdivision known as "Homes of Merit," which bids if accepted would be the reason for this particular order. These discussions were culminated on June 6, 1956, when a telephonic order was placed by the president of Purchaser corporation to Sellers' Los Angeles sales agent. Subsequently, a written confirmation of the order was prepared by Sellers at their home office in Oregon and mailed to Purchaser at Los Angeles. As appellant has significantly pointed out " [i]n this instance, as in all prior dealings between the parties, the defendant never *did sign an office copy or return it to plaintiffs.*" However, pursuant to said order, purchaser did accept delivery of various shipments of lumber at Los Angeles, California, the first shipment having been accepted on June 8, 1956.

 The pretrial conference order set forth various issues to be determined, including the following:

"2. If the trial court rules that the contract between the parties, for the purchase and sale of the lumber in question was in writing and was executed in Oregon, should the attachment levied herein be released."

In our opinion, the trial court was not obliged to make a specific finding upon the release of the attachment isasmuch as the trial court did not find the existence of a written contract.

 With respect to appellant's contention that the trial court failed to make specific findings on particular affirmative defenses and made inadequate awards on the cross-complaint, we think that it is abundantly apparent from a reading of Findings of Fact Numbers 11, 17, 18, 19 and 20 set forth hereinabove, that the trial court did consider the various contentions made with respect to shortages, quality and various additional costs claimed to have been incurred by Purchaser. Finding Number 11 clearly indicates that the trial court considered the contention made with respect to the claimed shortage of 8,404 board feet and specifically ruled that delivery was made of this quantity of lumber, which Purchaser failed to pick up. Under such circumstances, the trial court correctly determined that the obligation to pay should be based upon the contract. In addition, the trial court specifically found Purchaser to be entitled to $1,430.02 as the total amount of credits, which amount represented an allowance for the 17,224 board feet of lumber found by the trial court to have been properly rejected as being of inferior quality. As to the other items of damage claimed, the trial court upon substantial evidence ruled adversely to Purchaser.

It is our opinion that the findings of fact as made by the trial court are sufficiently specific and are supported by substantial evidence.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.