[Civ. No. 21997. Third Dist. Dec. 12, 1983.]

NEVADA COUNTY OFFICE OF EDUCATION,
Plaintiff and Appellant, v.
WILSON C. RILES, as Superintendent, etc.,
Defendant and Respondent;
CHRISTINE McCALL et al.,
Real Parties in Interest and Respondents.

768

**COUNSEL**

Brian A. Bishop, County Counsel, James A. Curtis, Assistant County Counsel, Larry G. Sage and Craig Tarpenning, Deputy County Counsel, for Plaintiff and Appellant.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Joseph O. Egan, Deputy Attorney General, Thomas M. Griffin, Gail ImObersteg, William Faulwetter, Roger D. Wolfertz, Barry A. Zolotar and David W. Girard for Defendant and Respondent.

Catherine J. Blakemore, Richard H. Koppes, Sheila C. Nolan and Susan Bertken, for Real Parties in Interest and Respondents.

**OPINION**

**EVANS, J.**—The Nevada County Office of Education (County) appeals from a judgment denying its petition for writ of mandate (Code Civ. Proc., § 1094.5). We affirm.

In September 1980, the parents of Jason McCall, a developmentally-disabled eight-year-old male, applied to County for medical services for Jason

as part of a special or "individualized education program."[1] The application included a request for occupational therapy (therapy). County referred Jason to California Children's Services (Services), a division of the State Department of Health Services. The referral was made pursuant to an interagency agreement between the State Department of Education (State) and the Department of Health Services. Services advised County that Jason was not eligible for therapy under their criteria because he did not have "a physically handicapping condition." Thereafter, County refused to provide Jason with therapy. In January 1981, the McCalls filed a request with the Superintendent of Public Instruction (Superintendent) for a due process hearing under Education Code section 56502 on the ground that therapy had been wrongly excluded from Jason's special education.

At the due process hearing held in March 1981, County requested that Services be joined as a party; the motion was taken under submission and subsequently denied. County also requested a continuance in order to serve subpoenas on five employees of Services and State.

On May 11, 1981, the hearing officer ruled in favor of the McCalls, finding that Jason "exhibits developmental lags in motor skills and require[s] the related services of OT [therapy] in order to benefit from special education." The decision required County to provide therapy "as prescribed by [Jason's] private physician."

On June 3, 1981, County filed a petition for writ of mandate[2] in superior court challenging the administrative decision, which petition was denied; this appeal by County followed.

The appeal essentially comes to us on the clerk's transcript; the appellate record was augmented to include certain documentary evidence, but there is no transcript of the due process hearing. ■ "On such an appeal, the findings are not subject to challenge, and it must be presumed that the evidence supports the findings. [Citations.] We are thus limited to a review of the judgment, the findings of fact and conclusions of law, and the plead-

---

[1]Special education is defined under federal law as "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." (20 U.S.C. § 1401(16).)

An individualized education program is a written statement formulated in a meeting between educators and parents which details the child's current performance, annual goals, services to be provided, projected duration, and criteria for a method of evaluating his progress. (20 U.S.C. § 1401(19).)

[2]A separate cause of action for declaratory relief was severed from County's petition for mandate and is not at issue on this appeal.

ings. [Citation.]" (*Dixon Mobile Homes, Inc.* v. *Walters* (1975) 48 Cal.App.3d 964, 967 [122 Cal.Rptr. 202].)

In 1975 Congress passed the Education for All Handicapped Children Act (the EAHCA). (20 U.S.C. § 1401 et seq.; 34 C.F.R. § 300.1 et seq. (1982).)[3] The EAHCA is a funding statute pursuant to which federal grants are made available to the states to assist them in educating the handicapped. Grants are conditioned, inter alia, on the state's establishing "a policy that assures all handicapped children the right to a free appropriate public education." (20 U.S.C. § 1412(1).) A "free appropriate public education" includes special education and related services provided at public expense. (20 U.S.C. § 1414(a)(5).) These services must include appropriate education, and be provided in conformity with a properly developed program. One of the "related services" is occupational therapy. (20 U.S.C. § 1401(17); 34 C.F.R. § 300.13 (1982).)

California elected to participate in the federal program and has enacted a comprehensive set of laws governing special education. (Ed. Code, § 56000 et seq.; Cal. Admin. Code, tit. 5, § 3000 et seq.) In accordance with federal law, state statutory and regulatory provisions require that local education agencies insure the provision of occupational therapy services. (Former Ed. Code, § 56363, subd. (b)(6) [in effect at the time of the proceedings below]; Cal. Admin. Code, tit. 5, §§ 3040, 3051.6.)

In addition to the obligation that local education agencies provide therapy services as part of special education, California law requires Services to provide therapy to physically handicapped persons who meet their specific disability criteria. (Health & Saf. Code, §§ 249, 250, 251.)

Both federal and state law permit the Superintendent to enter into agreements with other state agencies to provide the services mandated by participation in the EAHCA. (Ed. Code, § 56475.) In 1978 the Superintendent (representing State) and the Department of Health Services entered into an interagency agreement (which was amended in Dec. 1979 and Jan. 1980) regarding, inter alia, the provision of occupational therapy.

I

■ County first argues that the due process hearing was improperly conducted by a single hearing officer.[4] The administrative regulation in ef-

---

[3]At the time of the hearing and lower court review, the regulations were located at 45 Code of Federal Regulations section 121a.1. The pertinent portions of the regulations remain unchanged.

[4]The McCalls claim County has waived the right to argue this issue on appeal by failing to object below. (*Horn* v. *Atchison, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602 [39 Cal.Rptr.

fect at the time of the due process hearing (Mar. 1981) provided for a panel of three persons. (Former Cal. Admin. Code, tit. 5, § 3308, subd. (e).) However, that regulation conflicted with Education Code section 56505, subdivision (c), which was effective in 1980; that section provides the due process hearing is to be "conducted *by a person* knowledgeable in the laws governing special education and administrative hearings . . . ." (Italics added.)

Because the language of a statute controls over an inconsistent administrative regulation promulgated to implement the statute, we reject County's argument the hearing was improperly conducted. (See Gov. Code, § 11342.2; *Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97].)[5]

## II

■ County contends the hearing officer improperly denied it the right to compel the attendance of witnesses at the administrative hearing (Ed. Code, § 56505, subd. (e)(3); 20 U.S.C. § 1415(d)), thereby denying due process. The record indicates that on March 5, 1981, at County's request, the hearing officer issued subpoenas for five individuals associated with State and Services, but only two were actually served, and apparently neither of them testified. On March 12, 1981, the hearing officer informed County by letter that it was "not necessary to subpoena [three of the witnesses] if they agree to provide . . . a [written] memo." County subsequently introduced written responses from the witnesses at the administrative hearing and in the trial court.

The trial court made no express finding on the question of whether the hearing officer denied County its right to compel the attendance of witnesses. Although the March 12, 1981, correspondence from the hearing officer may suggest County did not have full opportunity to exercise its right to compel attendance of witnesses, the record also reflects the County did not do all it could have done to compel the attendance of witnesses.[6] Under

721, 394 P.2d 561].) County concedes as much by its statement that "any objections that [it] did not make numerous legal motions, including sanctions, etc., should be taken in light of the fact that no attorney of record appeared at the hearing for either party."

[5]The administrative regulation relied on by County was replaced in December 1981, to bring it into conformity with the statutory rule. (Cal. Admin. Code, tit. 5, § 3081, subd. (a).)

[6]In its answer to the petition for writ of mandate the Office of Administrative Hearings (OAH) and the Superintendent of Public Instruction indicate that "the hearing officer who heard this proceeding was contacted during the pendency of [the hearing proceeding] by counsel for California Children's Services who indicated that they had received [deficient] subpenas [*sic*] from [County] . . . [;] that said hearing officer . . . suggested that [County] could possibly alternatively proceed by getting written answers to the desired questions from these subpenaed [*sic*] persons . . . that [County] did submit such written answers . . . without objection . . . ."

such circumstances we cannot conclude the hearing officer denied County due process.

Moreover, the trial court made a finding that County was not denied a fair hearing, relying on the fact that the anticipated testimony of the witnesses it sought "would [have] relate[d] primarily to the issue as between the state agencies, . . . and would not [therefore] have resulted in a different decision . . . as to the issue with which he was primarily concerned." The pleadings support the court's conclusion that County sought the witnesses to testify on the issue of whether Services should be required to fund therapy services under the interagency agreement. That issue was not a proper subject of dispute at the due process hearing (see Part III, *post*). We agree with the trial court that any denial of County's right to compel witnesses in any event was not prejudicial. (See Code Civ. Proc., § 475.)[7]

### III

In denying County's motion to join Services as a party, the hearing officer stated that "joinder of CCS [Services] is not necessary to resolve the issues in this case. Respondent's concerns and attempts to resolve IAA [interagency agreement] policy differences can be more appropriately handled through other administrative procedures. The special education fair hearing process is not the proper forum to resolve these important issues."

The trial court affirmed the hearing officer's ruling: ". . . while the Federal Law does not envision a multiplicity of State agencies implementing the mandates of the law, it appears to place primary responsibility upon *the* 'State Educational Agency'. Hearings may be had as they specifically relate to any chargeable State agency but it is not necessary to join related State agencies in an action involving an agency of primary responsibility as defined by the Federal Law." (Italics in original.)

---

[7]In addition, whatever prejudice County suffered by the alleged denial of this right could have been remedied in the trial court had it used the proper vehicle for review of the administrative action by filing a civil action under federal law rather than a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. (See *San Francisco Unified School Dist.* v. *State of California* (1982) 131 Cal.App.3d 54, 63-67 [182 Cal.Rptr. 525].) Federal law expressly permits the trial court to hear evidence not contained in the administrative record in what is essentially a trial de novo and to reach an independent judgment based upon a preponderance of the evidence. (20 U.S.C. § 1415(e); see *Hendrick Hudson Dist. Bd. of Ed.* v. *Rowley* (1982) 458 U.S. 176 [73 L.Ed.2d 690, 102 S.Ct. 3034].)

■ The question of who may or must be a party,[8] to an administrative proceeding is dependent upon the purpose and effect of the proceeding and the particular statute under which it is brought. (See *Whitehouse v. Illinois Central R. Co.* (1955) 349 U.S. 366, 370 [99 L.Ed. 1155, 1159, 75 S.Ct. 845]; Note, *Administrative Law: Third-Party Participation in Adjudicative Administrative Hearings in California* (1959) 47 Cal.L.Rev. 747; Cal. Administrative Agency Practice (Cont.Ed.Bar 1970) § 1.31, pp. 26-27.) ■ An examination of the California Education Code sections enacted to carry out the procedural safeguards of the EAHCA make it clear that the purpose of the due process hearing is to provide a forum to resolve the single issue of whether a child is entitled to certain medical services as part of a "free appropriate public education." Most pertinent is Education Code section 56501, which explicitly limits the issues to be resolved at the hearing to those relating to "the identification, assessment, or educational placement of the child or the provision of a free, appropriate public education to the child." (See 20 U.S.C. § 1415(b)(1), (b)(2).) In addition, section 56500.2 provides that "An expeditious and effective process shall be implemented for the resolution of complaints regarding any alleged violations of the provisions of the [EAHCA] of 1975."

The record indicates that County sought to join Services in an attempt to obligate it under the interagency agreement to pay for the provision of therapy services. While County may in fact be correct about Services' obligation, it is wrong in concluding that federal and state law require *all* government agencies that may be involved in funding therapy be present at the due process hearing; indeed, such a requirement would effectively defeat the goal of providing "an expeditious and effective process" by involving issues unrelated to a child's educational need for medical services.

What County overlooks is that primary responsibility for compliance with federal law is placed on the public education agency.

The EAHCA clearly establishes the *educational agency* as the entity for insuring that educational and related services will be provided. It expressly provides that: "The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including

---

[8]The California Administrative Procedure Act (APA) defines "party" as "the agency, the respondent and any person, other than an officer or an employee of the agency in his official capacity, who has been allowed to appear or participate in the proceeding." (Gov. Code, § 11500, subd. (b).) Neither the APA, EAHCA, nor Education Code section 56500 et seq. deals directly with the right of third persons or other agencies to participate in the due process hearing.

all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational agency." (20 U.S.C. § 1412(6); see *Kruelle* v. *New Castle County Sch. Dist.* (3d Cir. 1981) 642 F.2d 687, 696; *North* v. *District of Columbia Bd. of Ed.* (D.D.C. 1979) 471 F.Supp. 136; *Parks* v. *Pavkovic* (N.D.Ill. 1983) 557 F.Supp. 1280; *Christopher T.* v. *San Fran. Unif. Sch. Dist.* (N.D.Cal. 1982) 553 F.Supp. 1107, 1116, fn. 35.)

The intent of establishing a single line of responsibility is clear. Referring to the rule that the state education agency must bear ultimate responsibility, the comment to the EAHCA states: "The Committee considers the establishment of single agency responsibility for assuring the right to education of all handicapped children of paramount importance. Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. . . . the responsibility must remain in a central agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handicapped children is squarely the responsibility of one agency." (Sen.Rep. No. 94-168, 1st Sess., p. 24 (1975); 1975 U.S. Code Cong. & Admin. News, at p. 1448.)

California law is consistent with federal law in holding that the state educational agency has primary responsibility to provide a "free, appropriate public education" in accordance with the EAHCA. (Ed. Code, §§ 56501, 56026, 56030, 56032, 56100, 56135; Gov. Code, § 7561.) This fact is explicitly recognized in the State Department of Education-Department of Health Services interagency agreement, where it is stated that "The State Education Agency may use all available sources of support . . . in order to assure a pupil with exceptional needs a free and appropriate public education."

Whether compliance with federal law exists is a determination made initially at the due process hearing by examining the child's medical needs and the mandates of federal law. Larger systemic issues, such as which government agency should provide or pay for the medical services needed,[9] in-

---

[9] Express statutory provision is made for resolution of interagency conflicts in Education Code section 56476. It provides: "(a) If any state agency fails to provide services specified in a child's individualized education program, and such agency is required to provide such services pursuant to federal law, state law, *interagency agreement,* or any combination thereof, such agency and the reasons for lack of provision shall be identified jointly by the

volve only tangentially the parent and pupil, and would clearly expand the scope of the administrative hearing beyond that contemplated in Education Code section 56500 et seq.

County's analogy to Code of Civil Procedure section 389, which requires joinder of necessary and indispensable parties in judicial proceedings, is not apt to the extent its application would defeat the purpose of the administrative proceeding. *Martin* v. *City of Corning* (1972) 25 Cal.App.3d 165 [101 Cal.Rptr. 678], cited by County and which involves Code of Civil Procedure 389, is inapposite.

We conclude the denial of the motion to join Services as a party in the administrative proceedings below was proper.

## IV

County attacks a number of the trial court's factual findings on the ground of insufficient evidence. Several of the challenged findings are supportable simply by reference to the clerk's transcript and the applicable law. (Findings I, II, III, and IV.) Without a transcript of the due process hearing (a judgment roll appeal), we must presume that the other challenged findings are supported by the record. (Findings V, VI, VIII, IX, XI, and XIII.) (*Dixon Mobile Homes, Inc.* v. *Walters, supra,* 48 Cal.App.3d at p. 967.)[10]

County also asserts that "The conclusions of law submitted by the court are not supported by substantial evidence in the same manner that the findings of fact of the court were not supported by substantial evidence." Although County has failed to specify how the conclusions are factually deficient, on this record it is of no consequence, since we must presume there is substantial evidence to support them. Moreover, we have reviewed each of the conclusions and find them legally sound.

---

superintendent and the appropriate state agency. [¶] (b) Within 15 calendar days of identification of such a problem, a report of such lack of provision of services shall be made to the secretary of the agency having jurisdiction over the state agency involved. If the services are not provided within 60 days, the issue shall be referred to the Director of Finance who shall, . . . take whatever action he or she deems appropriate to ensure that the services are provided. . . ." (Italics added.)

[10]In Finding X the trial court found the interagency agreement was entered into on February 20, 1980. The record supports County's claim that the agreement was entered into originally in June 1978, and amended in December 1979 and January 1980. However, the error has no bearing on any of the substantive issues raised herein.

V

*APPEAL BY THE SUPERINTENDENT*

As noted above, the McCalls initiated the proceeding below by filing a request for a due process hearing with the Superintendent, as provided in Education Code section 56502. The hearing was conducted by the OAH pursuant to an agreement with the State. (See Ed. Code, § 56505.)

Following the decision of the administrative hearing officer, County filed its petition for writ of mandate, naming the OAH and the Superintendent as respondents; the McCalls and Services were named as real parties in interest. In its petition County challenged several of the due process hearing procedures. The Attorney General filed an answer to the petition for OAH and the Superintendent. The answer specifically denied the alleged impropriety of the hearing procedures and the alleged invalidity of the hearing decision. The OAH and the Superintendent also raised, as an affirmative defense, that the Superintendent "is neither a necessary nor a proper party to this litigation;" that the Superintendent, as the "State educational agency," "is required to provide a mechanism for the administrative review of disputes such as that which arose between [the McCalls and County]," a responsibility which it fulfilled; that the "question of whether Jason M. had a condition which qualified for . . . services under the auspices of . . . Services . . . is completely irrelevant to whether similar services were required to be provided . . . for *educative* reasons pursuant to the 'special education' program;" that the alleged procedural irregularities "are [not] . . . of any substance at this time, . . . [since] Children's Services has been served as a real party in the instant proceedings and . . . [since County] has the full and complete right to present any evidence it wishes, including the evidence it claims was wrongfully precluded below [in] the instant proceedings." (Italics in original.)

Following denial of County's writ petition, the trial court ordered and counsel for the Superintendent and the OAH prepared findings and conclusions, which were signed by the court without substantial modification. County thereafter filed a notice of appeal; no other party has appealed.

The Superintendent has filed a brief in this court challenging the administrative hearing procedures and certain of the findings of fact and conclusions of law. ■ The McCalls ask this court to strike the brief on the ground that the Superintendent is not an aggrieved party and therefore lacks standing to appeal.

The due process hearing was conducted under the auspices of the Superintendent. (See Ed. Code, §§ 56502, subd. (a), 56503, subd. (e), 56505; 20 U.S.C. § 1415(b)(2).) When County subsequently filed a petition for writ of mandate in superior court attacking the decision of the hearing officer, the Superintendent and OAH were named defendants who were entitled to defend against the claim that they had improperly failed to discharge their duties according to law. (See *Koehn* v. *State Board of Equalization* (1958) 50 Cal.2d 432, 436 [326 P.2d 502].) However, the Superintendent has waived his right to attack the trial court's decision by failure to appeal. (Cal. Rules of Court, rule 2(a).) ■ As a general rule a court is not permitted to review allegations of error against a nonappealing party. (*Auer* v. *Frank* (1964) 227 Cal.App.2d 396 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108]; *Mulder* v. *Mendo Wood Products, Inc.* (1964) 225 Cal.App.2d 619 [37 Cal.Rptr. 479].)

■ It is also the rule that if the judgment or order is in favor of a party he is not aggrieved and cannot appeal. (*Danielson* v. *Stokes* (1963) 214 Cal.App.2d 234, 237 [29 Cal.Rptr. 489]; see Code Civ. Proc., § 902; 20 U.S.C. § 1415(e)(2); Ed. Code, § 56505.) ■ Here, the trial court ruled in a manner consistent with the answer filed by the Superintendent in response to the claims of error asserted by County. The Superintendent has in effect waived his right to attack the trial court's decision (including the findings of fact and conclusions of law) by expressly defending or agreeing to the administrative and trial court action he now objects to on appeal. (*Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 270, p. 4260.)

Under the rules of appellate practice we decline review of the Superintendent's claims of error;[11] however, most of them were presented by County and have been considered and rejected by the court.

The judgment is affirmed.

Puglia, P. J. and Carr, J., concurred.

A petition for a rehearing was denied January 11, 1984.

---

[11]The Superintendent's request for additional findings of fact has been considered and is denied.