[Civ. No. 9111.   Fourth Dist., Div. One.   July 25, 1968.]

GEORGE JOHN RUSS, Plaintiff and Appellant, v. BURTON E. SMITH, as Real Estate Commissioner, etc., Defendant and Respondent.

Reed & Brockway, and Robert C. Brockway for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and H. Warren Siegel, Deputy Attorney General, for Defendant and Respondent.

WHELAN, J.—George John Russ (Russ), a licensee of the California Real Estate Commission, was named respondent in

a proceeding to revoke two broker's licenses issued to him.

One of the licenses was in the name of George John Russ doing business as Geo. J. Russ Realty; the other in the name of George John Russ doing business as Green Valley Estates Realty.

On May 25, 1967, a hearing was held on an accusation alleging that Russ had violated certain sections of the Business and Professions Code governing conduct of real estate brokers. Both licenses were described in the accusation.

On May 29, 1967, the hearing officer rendered his proposed decision finding cause for discipline against Russ under sections 10176, subdivision (g) and 10177, subdivision (f), Business and Professions Code. The hearing officer recommended that the license of Russ doing business as Green Valley Estates Realty be revoked. No mention was made in the proposed decision of the license in the name of Russ doing business as Geo. J. Russ Realty.

On June 14, 1967, the commissioner adopted the hearing officer's proposed decision, which was ordered effective as of July 5, 1967.

On July 12, 1967, the hearing officer issued an order *nunc pro tunc,* stating a clerical error had been made in the proposed decision, in that the name of Geo. J. Russ Realty had been clerically omitted. The proposed decision was corrected to find cause for discipline against Russ doing business as Green Valley Estates Realty and Geo. J. Russ Realty. The hearing officer corrected the recommended order of revocation to describe both licenses.

On July 17, 1967, the commissioner adopted the *nunc pro tunc* order, and ordered the corrected decision effective as of August 8, 1967.

Russ doing business as Geo. J. Russ Realty filed a petition for writ of mandate on August 3, 1967, alleging, in essence, that the issuance and adoption of the *nunc pro tunc* order was in excess of jurisdiction and constituted an abuse of discretion. The superior court denied the petition.

### GROUNDS FOR REVOCATION

The decision of the commissioner showed that Russ had been employed by an owner to sell a parcel of real estate; Russ and a saleswoman employed by him represented they had found a purchaser; in fact they presented as the purchaser the names of the parents of the saleswoman, a married woman, whose purported signatures were placed on the offer to purchase by Russ and the saleswoman; an escrow for that

purported sale was opened; at the same time Russ had found a *bona fide* purchaser at a price three thousand dollars higher than the price at which the owner had authorized a sale to be made; a second escrow in the names of the saleswoman's parents as sellers and the actual purchaser was opened at the same escrow company in which the purchase money was deposited by the buyer; enough of that money was transferred to the first escrow to satisfy the owner's demands; Russ received a commission on the fictitious sale which, as well as the profit realized, he shared with the saleswoman; none of the facts as to the sale actually made was disclosed to the principal. The commission had been directed to be paid to Russ doing business as Geo. J. Russ Realty.

### CONTENTIONS ON APPEAL

Russ's contentions are (1) that the act of correcting the decision constituted a re-adjudication as to the penalty to be imposed and was not the correction of a mere clerical error; (2) that because no minute orders or memoranda were kept by the hearing officer, there is nothing in the record to which a *nunc pro tunc* order can conform; (3) that the commissioner is estopped to revoke the second license.

### THE CORRECTION OF THE DECISION WAS NOT A JUDICIAL ACT

Some consideration must be given to the statutory framework within which Russ, although only a single licensee, held two licenses from the commissioner.[1]

There are specific provisions for the licensing of corporations and partnerships, and which define the natural persons authorized to act for such legal entities. None of those has any application here.

---

[1] "Every licensed real estate broker shall have and maintain a definite place of business in the State of California which shall serve as his office for the transaction of business. This office shall be the place where his license is displayed and where personal consultations with clients are held.

" . . . . . . . . .

"No real estate license authorizes the licensee to do business except from the location stipulated in the real estate license." (Bus. & Prof. Code, § 10162.)

"No real estate license gives authority to do any act specified in this chapter to any person, other than the person to whom the license is issued." (Bus. & Prof. Code, § 10157.)

"If the applicant for a real estate broker's license maintains more than one place of business within the State he shall apply for and procure an additional license for each branch office so maintained by him. Every such application shall state the name of the person and the location of the place or places of business for which such license is desired. The commissioner may determine whether or not a real estate broker is doing

It is to be assumed that Russ had maintained two places of business, in each of which was displayed one of the two licenses issued to him;[2] as to the license in the name of George John Russ doing business as Green Valley Estates Realty, it may be assumed that he had complied with the requirements of section 10159.5, Business and Professions Code. However, no such requirement applied to the license in the name of George John Russ doing business as Geo. J. Russ Realty, since that is not a fictitious name within the meaning of the Civil Code. (*Levelon Builders Inc.* v. *Lynn,* 194 Cal. App.2d 657, 663 [15 Cal.Rptr. 582]; *Vagim* v. *Brown,* 63 Cal.App.2d 504, 506 [146 P.2d 923]; *Messick* v. *Houx Bros. Inc.,* 105 Cal.App. 637 [288 P. 434].)

Although doing business under a fictitious name, Russ, under that name, was not a different legal person or entity from Russ doing business under his own name.

The theory that in revoking Russ's license the act of the commissioner could be interpreted as intending only to prevent Russ from doing business at more than one location is far removed from reality.

The misconduct that made it proper to revoke the license of Russ was personal to Russ and had nothing to do with the business location at which he might have had one or the other license, and had nothing to do with the adventitious circumstance that he handled the transaction under the fictitious name or his own name.

A revocation of a license merely to do business at one of several offices would be no revocation at all. Under the statute, the right to do business at several different offices rather than one does not depend upon good character or moral or business qualifications; and the restriction or denial of that right is not a form of discipline to be imposed for violation of the standards of conduct imposed upon licensee. There is little

---

a real estate brokerage business at or from any particular location which requires him to have a branch office license.'' (Bus. & Prof. Code, § 10163.)

''Every person applying for a license under this chapter who desires to have such license issued under a fictitious name shall file with his application a certified copy of both the entry of the county clerk and the affidavit of publication made pursuant to the provisions of Chapter 2 (commencing with Section 2466) of Title 10 of Part 4 of Division 3 of the Civil Code.'' (Bus. & Prof. Code, § 10159.5.)

[2] Counsel for Russ at the time of oral argument confirmed that such was the case when the second license was issued. For the original license, the fee is $25; for the branch office license, the fee is $4.

390

room for the exercise of discretion in granting a branch license.[3]

The second license did not serve as re-insurance for Russ against a nonlicensed status; when one license was stripped away, there did not remain an inner license for his comfort and protection. He was, in effect, not twice-licensed, but licensed once to do business at two locations.

██ The disciplinary action was taken, not *in rem* against a license or licenses, but *in personam* against a licensee.

We are of opinion that the revocation of the license of Russ under whatever name he did business was implicit in the original decision of the commissioner.

By his *nunc pro tunc* order, the commissioner has spelled out in detail the legal effect of the original decision, a proceeding perhaps made necessary by the intra-office system of indexing the names of licensees. It did no more than to identify further the person against whom the disciplinary action was taken, who was a party to the proceeding, had had the opportunity to contest the accusations on the merits, and who, although the petition for writ of mandate was filed well within the period within which review might have been sought of the decision as originally adopted (Gov. Code, §§ 11521, 11523), made no attack upon the findings.

██ Where the name of a person against whom a judgment has been rendered appears on the face of the record, the judgment may be corrected to show such true name, if by reason of clerical error the judgment failed to show such true name (*Leviston* v. *Swan*, 33 Cal. 480, 484; *Chicago Clock Co.* v. *Tobin*, 123 Cal. 377, 378 [55 P. 1007]; *Mirabito* v. *San Francisco Dairy Co.*, 8 Cal.App.2d 54, 57 [47 P.2d 530]; *Kohlstedt* v. *Hauseur*, 24 Cal.App.2d 60 [74 P.2d 314]); even after an appeal has been taken (*Boust* v. *Superior Court*, 162 Cal. 343, 346 [122 P. 956]; *Fay* v. *Stubenrauch*, 141 Cal. 573, 574 [75 P. 174]).

██ The fact that the error of a clerical nature, and which was not the result of a judicial determination, was made by a judge rather than by a clerk does not make it less subject to correction under the cited rule. (*Estate of Goldberg*, 10 Cal.2d 709. 715 [76 P.2d 508].)

The statement by the hearing officer that the error was

_____

[3]Title 10, section 21715 of the Administrative Code provides:

''Requests for a branch office license, . . . if complete and in order, will be effective on the date the application and fee therefor are received in any office in the Division.''

clerical is entitled to consideration. (*Estate of Doane*, 62 Cal.2d 68, 71 [41 Cal.Rptr. 165, 396 P.2d 581].)

## LACK OF ANY MINUTE BOOK RECORD

The claim that the correction made by the commissioner is not supported by any record such as a minute entry does not affect our conclusion that the revocation of the license of Russ doing business under the name of Green Valley Estates Realty was in fact the revocation of the basic or original license issued to Russ and that its explication in the *nunc pro tunc* order was neither an abuse of discretion nor outside the jurisdiction of the commissioner.

In *Carpenter* v. *Pacific Mut. Life Ins. Co.*, 14 Cal.2d 704, 708-709 [96 P.2d 796], the court stated as follows: " 'It was for the trial judge to determine whether the order was complete and all that he intended it to be or whether it was deficient. If the mistake was clerical, it could be corrected. If it was judicial, it could not be. It must be presumed that he found it to be his own clerical error; otherwise he would have had no right to make the second order. The facts were completely and solely within his own knowledge. He alone knew whether a mistake had been made and how it had been made. He had a right to rely upon his own memory [citation] and his determination of the fact is conclusive.' "

The power of a court to correct clerical errors in its judgment is possessed by courts not of record as well as by those of record. (*Wildenhayn* v. *Justice's Court*, 34 Cal.App. 306 [167 P. 305].)

We are of opinion that such power pertains also to administrative tribunals exercising quasi-judicial functions. (See *American Trucking Assn.* v. *Frisco Transp. Co.*, 358 U.S. 133 [3 L.Ed.2d 172, 79 S.Ct. 170].) Such *nunc pro tunc* corrections were mentioned in *Ginns* v. *Savage*, 61 Cal.2d 520 [39 Cal.Rptr. 377, 393 P.2d 689], without any suggestion that they were impermissible.

## THE CLAIM OF ESTOPPEL

The act of the commissioner in making the *nunc pro tunc* order of correction did not unfairly work to the prejudice of Russ, because at the time the action was taken Russ's rights to obtain a review of the entire proceeding were still available to him.

Russ's brief on appeal speaks of his having passed up his right to appeal the commissioner's original decision in the belief that he had been allowed to retain one license. The right

to petition for reconsideration of the original decision expired on July 5, 1967, and from the amended decision on August 8, 1967.

Russ accepted the revocation specified in the original decision without asking for reconsideration; he does not point out why he failed to petition for reconsideration of the corrected decision which he might have done.

Russ speaks of having given up the right to present matter in mitigation in the belief he was left with one license; such right should have been exercised at the original hearing, which was before he knew of the proposed decision (Gov. Code, § 11520) and might have been exercised upon a reconsideration of the decision as corrected had he requested and obtained such reconsideration.

We are unable to see any element of estoppel available to Russ in the fact that the method adopted by the commissioner permitted Russ to carry on business beyond the date that might have marked the effective termination of his licensed status and resulted in the licensing of two salesmen as his employees.

He has not established the elements of estoppel.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.