[No. A051405. First Dist., Div. Two. Sept 18, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
LANDON WHITE BAIL BONDS, Defendant and Appellant;
AMERICAN BANKERS INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Annette Lombardi for Defendant and Appellant.

James P. Botz, County Counsel, and Richard M. Flores, Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**BENSON, J.**—This appeal from an order in a bail forfeiture proceeding raises two issues: (1) May a bail bond agent be held liable in a summary judgment of bail forfeiture under Penal Code section 1306? (2) May a summary judgment of bail forfeiture be amended more than 90 days after the day it could first be entered, in order to explicitly state that it is rendered against the surety as well as against the bail agent? We will conclude that a summary judgment purporting to name a mere bail agent as a judgment debtor is, to that extent, void on the face of the record, but that under the circumstances shown here such a judgment may be corrected at any time to reflect the trial court's manifest intent to name the surety as a judgment debtor.

### BACKGROUND

Diego Quiroz was charged with burglary and was admitted to bail in the sum of $10,000. American Bankers Insurance Company (Bankers) issued a bond in that amount, undertaking Quiroz's appearance. Two rubber-stamped

impressions on the bond indicated that the "bail agent" was Landon White Bail Bonds (White).

Quiroz failed to appear on November 4, 1988. Bail was declared forfeited and notice of forfeiture was duly given to Bankers and White. On September 13, 1989, after having granted an extension of time to seek vacation of forfeiture, Judge Jamar entered summary judgment pursuant to Penal Code section 1306.[1] The opening paragraph of the judgment recited that the defendant had "posted bail bond AB10-00783292 in the amount of $10,000.00 with AMERICAN BANKERS INSURANCE COMPANY as surety of such bond." The final paragraph of the judgment stated, "IT IS HEREBY ORDERED, pursuant to the provisions of Section 1305 and 1306 of the Penal Code, that Summary Judgment be, and the same is hereby rendered against Landon White Bail Bonds in the sum of $10,000.00 and in favor of the People of the State of California." Five days later, county counsel served Bankers and White with a demand for payment which recited, among other things, that judgment had been entered against both of them.

On October 3, 1989, White and Bankers appeared jointly in a written motion to vacate the summary judgment.[2] Their papers relied entirely on substantive grounds, asserting that they did not collude in the nonappearance of Quiroz and that adequate efforts had been made to secure his attendance. When the motion was heard on November 30, 1989, movants appeared through counsel, who asserted for the first time that the judgment was defective because it was entered against the bail agent instead of the surety. The motion to vacate the summary judgment was denied. No appeal was taken from the summary judgment or from the denial of the motion to vacate.

On May 9, 1990, Judge Jamar entered a "Corrected Amended Summary Judgment (Nunc Pro Tunc) Amending Summary Judgment Filed September

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Section 1306 provides in part:

"(a) When any bond is forfeited and the period of time specified in Section 1305 [i.e., 180 days after notice of forfeiture] has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound. . . . [¶] (b) If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

[2]The motion was filed by "Landon White Bail Bonds . . . In Propria Persona." It was signed by Marvel Fowler, who described himself as "Agent," "Bail Agent for Surety and Real Party in Interest," and, in a later document, "Owner[,] Landon White Bail Bonds." At no time was Mr. Fowler identified as a member of the bar, but no challenge was raised to his appearance on behalf of White and Bankers.

13, 1989." The amended judgment was substantially identical to the earlier judgment except that the final paragraph explicitly stated that it was rendered against Bankers as well as against White.[3]

On May 29, 1990, surety and agent jointly filed a motion to "Vacate Summary Judgment and Exonerate Bail." They contended that (1) the original summary judgment was defective, and indeed "void," because it was entered against the bail agent and not the surety; and (2) the "nunc pro tunc" judgment was also void because entered after expiration of the 90-day period specified in section 1306.

Although both the original and the amended judgment had been entered by Judge Jamar, the motion to vacate was heard by Judge Antolini.[4] By order dated July 3, 1990, he granted the motion to vacate the summary judgment "as to the surety American Bankers Insurance Company ONLY." Bankers and White then moved the court to "clarify" this ruling. The stated thrust of this motion was that there was no outstanding judgment against White because the amended judgment had superseded the earlier judgment, and had in turn been vacated. Therefore, movants argued, "in order for Landon White to file a Notice of Appeal, the court must state whether it intended to reinstate the earlier summary judgment against Landon White Bail Bonds." By order dated September 13, 1990, Judge Antolini ruled that (1) the amended summary judgment was vacated, (2) the order of July 3 was vacated, and (3) the original summary judgment was reinstated. On October 22, 1990, White filed a notice of appeal from the order of September 13, 1990. On November 9, 1990, county counsel filed a notice of cross-appeal "from that portion of [the order of September 13, 1990] that vacated the Court's prior Corrected Amended Summary Judgment Entered Nunc Pro Tunc and filed on May 9, 1990."

## I. JUDGMENT AGAINST BAIL AGENT

White contends that since it was a not a surety but a mere agent for one, it cannot be liable for a forfeiture of bail, and summary judgment was erroneously rendered against it.

Proceedings for the forfeiture of bail are governed by sections 1305 through 1309. These statutes are " 'strictly construed in favor of the surety to avoid the harsh results of a forfeiture.' " (*County of Los Angeles* v. *Surety Ins.*

---

[3]This "corrected amended summary judgment" had been preceded by an "amended summary judgment" which added Bankers name to the last paragraph but erroneously substituted another bail agent's name for that of White.

[4]Judge Antolini asked counsel why the motion was before him. Counsel replied, "The clerk told us to come here."

*Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263], quoting *People* v. *Surety Insurance Co.* (1982) 136 Cal.App.3d 556, 561 [186 Cal.Rptr. 385]; see *People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385].) Where they require the court to " ' "exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limitations is in excess of its jurisdiction." ' " (*County of Los Angeles* v. *Surety Ins. Co., supra,* 162 Cal.App.3d at pp. 62-63; *People* v. *Resolute Ins. Co.* (1975) 50 Cal.App.3d 433, 435 [123 Cal.Rptr. 246].)

Section 1305 provides that when a defendant fails to appear, the court shall declare bail forfeited. Notice of the forfeiture must be given to "the surety on the bond" and to "the bail agent or solicitor who posted the bond." (§ 1305, subd. (a).) The forfeiture may be set aside within 180 days after its entry in the minutes, or the mailing of notice, provided specified conditions are met. (*Ibid.*) If the forfeiture is not set aside, then upon expiration of the period for doing so, "the court which has declared the forfeiture . . . shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound." (§ 1306, subd. (a).)

 Agent contends that he is not a "bondsman named in the bond" as being "bound" in any "amount." Therefore, he contends, the trial court had no power to impose liability on him, and the judgment purporting to do so was void. We agree. The statute only authorizes summary judgment against the sureties, i.e., those who, by the terms of the bond, explicitly bind themselves to pay a stated amount. The intent to hold only the surety is reflected in section 1278, which declares that an undertaking of bail should provide in part as follows (italics added): "If the forfeiture of this bond be ordered by the court, *judgment may be summarily made and entered forthwith against the said (naming the sureties),* and the defendant if he or she be a party to the bond, for the amount of their respective undertakings herein, as provided by Sections 1305 and 1306."

The conclusion that the statute must be understood as empowering the court to enter judgment only against those who expressly assume liability in the bond accords with the one published decision to consider the issue. (*County of Los Angeles* v. *Wilshire Ins. Co.* (1979) 103 Cal.App.3d Supp. 1 [163 Cal.Rptr. 123].) It also accords with the fundamental principle that the entire bonding procedure rests on the "contractual aspect of the bond." (*People* v. *Cox* (1988) 202 Cal.App.3d 574, 580 [249 Cal.Rptr. 1].) The court alluded to this point in *County of Los Angeles* v. *Wilshire Ins. Co., supra,* at page Supp. 3, where it stated that the bail agent "is not a bondsman at all. He is clearly designated in the bond itself as the agent of the bondsman and he

made no undertaking at all." (*Id.* at p. Supp. 3.) Exactly the same is true of White.

We acknowledge that the term "bondsman" is often employed in common usage to refer to a bail agent or solicitor such as White. Traditionally, however, the term referred to the issuer of the bond—the surety. (Black's Law Dict. (6th ed. 1990) p. 181.) In any case, we need not linger over the meaning conveyed by the term when it stands alone. The question here concerns the sweep of section 1306, and the Legislature has explicitly limited that statute to persons "named in the bond" as "bound" to pay money. White is not such a person, and cannot be subjected to liability under the governing statutes.

The county offers no plausible grounds for reaching a contrary result. It vaguely suggests that a legislative intent to impose liability on bail agents emanates from the allusion in section 1308 to summary judgment against a "person or corporation."[5] In that statute, however, the phrase "person or corporation" explicitly refers to sureties. The use of "person" merely reflects the fact that a bail undertaking may be executed by a private individual as well as a corporate insurer. (See §§ 1278, 1279; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2011, p. 2372.) By no reasonable interpretation does the term "person" refer to bail agents.

 We conclude that the rendition of summary judgment against Landon White Bail Bonds was erroneous. If that were all, however, a serious question would arise whether we possess jurisdiction over White's appeal. The original judgment against White stood unappealed and unmodified for some eight months before any further action took place in this matter.[6]

---

[5]Section 1308 provides in part: "No court or magistrate shall accept *any person or corporation as surety* on bail if any summary judgment against any *that* [*sic*] *person or corporation* entered pursuant to Section 1306 remains unpaid after the expiration of 20 days after service of notice of the entry of the summary judgment . . . ." (Italics added.)

It may be that the county's entire argument is predicated on the presence of the word "any" before the phrase, "that person or corporation." The inclusion of "any" is patently a drafting error introduced in the 1987 amendments to the statute. (See Stats. 1987, ch. 173, § 1.) The presence of both "any" and "that" renders the sentence ungrammatical; therefore one or the other must be disregarded. To ignore "that" in favor of "any" would make the statute nonsensical: it would then state that when *any* summary judgment went unpaid, *no* person or corporation could be accepted as surety.

[6]Since the original judgment was not a consent judgment as to White, it was appealable. (*People* v. *Surety Ins. Co.* (1985) 165 Cal.App.3d 22, 25, fn. 2 [211 Cal.Rptr. 204].) The original time to appeal from that judgment expired no later than 180 days after entry of the judgment, or March 12, 1990—six months before this appeal was filed. (Cal. Rules of Court, rule 2(a).) Indeed, since White moved to vacate that judgment, the time to appeal expired even earlier—either 30 or 60 days after White received the clerk's notice of the denial of the

■ Ordinarily, White's failure to appeal from that judgment would preclude a later appeal raising defects which were first introduced there. (See *Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959, 967 [231 Cal.Rptr. 241]; *Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1087 [271 Cal.Rptr. 44]; Code Civ. Proc., § 906.) Since the issue thus raised is jurisdictional, we must consider it on our own motion even though the parties have failed to address it. (See *Kinoshita, supra,* at p. 962.)

White suggested below that the amended judgment of May 1990 "superseded" the original judgment. However, since White's time to appeal had long since expired when the amended judgment was entered, and that judgment effected no material change as to him, the second judgment did not resurrect his right to appeal. (See *George* v. *Bekins Van & Storage Co.* (1948) 83 Cal.App.2d 478, 481, 482 [189 P.2d 301] [defendant named in original judgment was obliged to appeal from that judgment, and appeal was not premature, despite later amendments affecting other defendants]; *Mulder* v. *Mendo Wood Products, Inc.* (1964) 225 Cal.App.2d 619, 634-635 [37 Cal.Rptr. 479], cert. den. 379 U.S. 844 [13 L.Ed.2d 50, 85 S.Ct. 85]; compare *Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 854-855 [237 Cal.Rptr. 282] [right to appeal from first judgment, actually or apparently suspended by entry of second, was reinstated on vacation of second]; *Avery* v. *Associated Seed Growers, Inc.* (1963) 211 Cal.App.2d 613 [27 Cal.Rptr. 625]; *In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 671 [245 Cal.Rptr. 673].)

Jurisdiction over White's appeal thus turns on the question whether the original judgment was "void on its face" as to White, such that it could be attacked at any time and the resulting ruling could be appealed. (See *People* v. *Silva* (1981) 114 Cal.App.3d 538, 546 [170 Cal.Rptr. 713].)

As previously noted, where the bail forfeiture statutes require the court to exercise its jurisdiction in a particular manner, orders or judgments not complying with the prescribed limitations are beyond the court's jurisdiction and void. A variety of statutory limitations and procedures have been held jurisdictional within this rule. (See *People* v. *United Bonding Ins. Co., supra,* 5 Cal.3d at p. 907 [required declaration of forfeiture upon unexcused nonappearance]; *id.* at p. 904, citing *People* v. *Black* (1961) 55 Cal.2d 275 [10 Cal.Rptr. 459, 358 P.2d 915] [180-day period to seek discharge of forfeiture]; *People* v. *American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1297 [278 Cal.Rptr. 314], review den. [180-day period]; *People* v. *Earhart* (1972) 28 Cal.App.3d 840 [104 Cal.Rptr. 322] [30-day period for notice of forfeiture];

motion to vacate. (See *People* v. *Souza* (1984) 156 Cal.App.3d 834, 837, fn. 2 [203 Cal.Rptr. 80] [order denying motion to vacate forfeiture, entered before summary judgment, held appealable].)

*People* v. *Cox, supra,* 202 Cal.App.3d at p. 577 [90-day period for entry of summary judgment]; *People* v. *Surety Ins. Co.* (1973) 30 Cal.App.3d 75 [106 Cal.Rptr. 220] [same]; *People* v. *Resolute Ins. Co., supra,* 50 Cal.App.3d at p. 437 [notification to surety of transfer of bond from complaint to indictment]; *People* v. *Surety Ins. Co.* (1984) 158 Cal.App.3d Supp. 1 [204 Cal.Rptr. 893] [notice to bail agent at record address]; but see *American Bankers Ins. Co., supra,* 227 Cal.App.3d at pp. 1294-1296 [erroneous mailing to wrong bail agent not a jurisdictional defect where correct agent received notice within statutory period].)

We believe this principle applies with equal force to the statutory restriction on persons against whom summary judgment is proper. A judgment against someone not subject to liability under the statute may be collaterally attacked at any time, and the resulting ruling may be reviewed on appeal, provided the defect is apparent on the face of the judgment. The judgment before us is void on its face insofar as it holds Landon White Bail Bonds liable for forfeiture of the bond in question.

## II. Judgment Against Surety

The original judgment stated in part that "Summary Judgment . . . is hereby rendered against Landon White Bail Bonds in the sum of $10,000.00 and in favor of the People of the State of California." In its "corrected amended summary judgment" entered some eight months later, the trial court amended this paragraph to state that judgment was rendered "against Landon White Bail Bonds and American Bankers Insurance Company." The trial court later vacated this amended judgment in response to Bankers' contention that the court had lacked jurisdiction to make the amendment.

The county cross-appeals from the order vacating the amended judgment, contending that (1) the original judgment effectively named Bankers as a judgment debtor; and (2) the court properly amended the judgment to make its original intention explicit. Bankers replies that the amended judgment was a nullity because it was entered more than 90 days after the date on which summary judgment could first be entered.

It is true, as Bankers contends, that the trial court cannot employ a nunc pro tunc entry to defeat the statutory deadline for entry of summary judgment. (*People* v. *Black, supra,* 55 Cal.2d at p. 277; *People* v. *Cox, supra,* 202 Cal. App.3d at p. 577.) On the other hand, if the amended judgment was otherwise valid, "the fact that it was designated a *nunc pro tunc* order does not vitiate its efficacy." (*Black, supra,* at p. 278.)

In determining the nature and effect of the amended judgment we must first determine the nature and effect of the original judgment as it concerned Bankers. The central questions are: (1) what order was in fact made in the original summary judgment, and (2) was the substance of the original decree materially changed by the amended judgment? (See *Estate of Careaga* (1964) 61 Cal.2d 471, 474-475 [39 Cal.Rptr. 215, 393 P.2d 415].)

■ The meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally. (*Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 724 [143 Cal.Rptr. 826]; *Estate of Careaga, supra,* 61 Cal.2d at p. 475.) " '[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention.' " (*In re Gideon* (1958) 157 Cal.App.2d 133, 136 [320 P.2d 599], quoting *Lazar* v. *Superior Court* (1940) 16 Cal.2d 617, 622 [107 P.2d 249].) " 'No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided.' " (*In re Gideon, supra,* at p. 136, quoting *Larrison* v. *Walker* (Tex.Civ.App. 1941) 149 S.W.2d 172, 178.)

Where an ambiguity exists, the court may examine the entire record to determine the judgment's scope and effect. (*Estate of Careaga, supra,* 61 Cal.2d at p. 475; *Verner* v. *Verner, supra,* 77 Cal.App.3d at p. 724.) The court may also " 'refer to the circumstances surrounding the making of the order or judgment, [and] to the condition of the cause in which it was entered.' " (*In re Gideon, supra,* 157 Cal.App.2d at p. 137, quoting *Ex Parte Ambrose* (1887) 72 Cal. 398, 401 [14 P. 33]; see *Yarrow* v. *State of California* (1960) 53 Cal.2d 427, 436 [2 Cal.Rptr. 137, 348 P.2d 687]; *Estate of Callnon* (1969) 70 Cal.2d 150, 157 [74 Cal.Rptr. 250, 449 P.2d 186].) Subsequent actions by the redering judge may be considered as bearing upon the judgment's intended meaning and effect. (See *Verdier* v. *Verdier* (1953) 121 Cal.App.2d 190, 192-193 [263 P.2d 57].)

The original judgment here correctly names Bankers as the surety on the forfeited bond. The difficulty arises only because the final paragraph fails to mention Bankers again, while specifically decreeing the rendition of judgment against White. We have little doubt that if this reference to White were absent so that the judgment failed entirely to specify those against whom it ran, it would be properly interpreted as rendered against Bankers. (See *Irvine* v. *Mazurette* (1953) 115 Cal.App.2d 612, 613-614 [252 P.2d 362] [judgment failing to name defendants against whom rendered was interpreted as being against appellants]; *Minehan* v. *Silveria* (1933) 131 Cal.App. 317, 319-320 [21 P.2d 617] [judgment against "defendants" properly construed as being against all defendants against whom it could have been rendered in light of record].) We believe that the reference in a judgment to a party plainly liable,

followed by an omission of that party's name from the language of decree, at least gives rise to an ambiguity calling for an inquiry into the court's real intentions as reflected in the entire record and surrounding circumstances.

 "All intendments favor the validity of a decree or judgment. Courts should interpret judgments in such manner as to make them valid and with reference to the law regulating the rights of the parties." (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 678 [56 Cal.Rptr. 265, 423 P.2d 193].) "A judgment must be given a construction that will support it if this may be done within reason and the accepted rules of construction." (*In re Gideon, supra,* 157 Cal.App.2d at p. 135); see *Kincaid* v. *Sears, Roebuck & Co.* (1968) 259 Cal.App.2d 733, 740 [66 Cal.Rptr. 915], disapproved on another point in *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 370 [90 Cal.Rptr. 592, 475 P.2d 864].) Particularly where it appears that an ambiguity is the result of oversight and inadvertence, "the judgment as entered should be liberally construed with a view of giving effect to the manifest intent of the court." (*In re Gideon, supra,* at p. 137.)

 Here the court manifestly intended to render judgment against Bankers. That intention appears in (1) the "condition of the cause," i.e., Bankers' indisputable substantive liability under sections 1305 and 1306; (2) the judgment's express reference to those sections; (3) the terms of the underlying bond, also explicitly referred to in the judgment; (4) the explicit reference in the judgment to Bankers as the surety on that bond; and (5) the court's subsequent action in amending the judgment to name Bankers. This record provides no support for an inference that the court ever believed Bankers should *not* be named in the judgment. The court's simultaneous intention to enter judgment against White, while erroneous, in no way vitiated the manifest intention to enter judgment against Bankers.

 Where a judgment fails to express the court's true intentions as they existed at the time of rendition, the court generally has the power to correct the judgment to reflect those intentions. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 68, pp. 502-503 [correction of clerical error]; *Russ* v. *Smith* (1968) 264 Cal.App.2d 385, 390-391 [70 Cal.Rptr. 813] [where name of person against whom judgment has been rendered appears on face of record, but was omitted from judgment due to clerical error, judgment can be corrected at any time]; *Lang* v. *Superior Court* (1961) 198 Cal.App.2d 16 [18 Cal.Rptr. 67] [trial court properly amended judgment while appeal pending to recite liability of individual defendants and name them]; *Dorland* v. *Dorland* (1960) 178 Cal. App.2d 664, 670-671 [3 Cal.Rptr. 262] [amendment to name administrator rather than estate]; *Mirabito* v. *San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 57 [47 P.2d 530] [substitution of alter ego;

court may at any time amend judgment to properly designate "the real defendants"]; *Thomson* v. *L. C. Roney & Co.* (1952) 112 Cal.App.2d 420, 425 [246 P.2d 1017] [same].) This power is not unlimited, and may not be employed to deprive a party of his or her opportunity to defend. (See *Motores De Mexicali* v. *Superior Court* (1958) 51 Cal.2d 172 [331 P.2d 1].) Here, however, this is not an issue; there was no belated joinder in the action but at most a belated amendment of the judgment to explicitly state what was already understood.

■ The more difficult question is whether, under the present circumstances, the trial court's power to make such corrections must give way to the general judicial disfavor of bail forfeitures. Is the court disabled from correcting a judgment to explicitly state that it is rendered against the surety where, as here, it failed to render a judgment making that intention explicit within the statutory 90-day period? We conclude that the court is not so disabled where, as here, the original judgment was manifestly intended to run against the surety.

Under section 1306, subdivision (b), the trial court loses the power to enter summary judgment "[i]f, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, *summary judgment is not entered* within 90 days . . . ." (Italics added.) Here, of course, summary judgment was entered within 90 days, but failed to explicitly recite that it was rendered against the surety. But as we have held, it was *in fact* rendered against the surety. Bankers in effect contends that section 1306 contains an implied further restriction, i.e., that the summary judgment entered within 90 days must explicitly recite that it is rendered against the surety. We do not believe the policy of strict construction to avoid forfeitures extends that far. This is not a situation where the supposed flaw in the proceedings would have some tendency, concrete or theoretical, to deprive the surety of some legislatively prescribed protection. The manifest purpose of the judgment was to impose the liability which follows by law from the forfeiture of the bond described in the judgment. The county complied with all notice requirements and the surety was fully apprised of the fact that a judgment had been rendered on its bond. In fact, the surety appeared and sought to vacate the judgment on other grounds, denying that it was named in the judgment only after the time for entering an original judgment had expired.[7] We believe the policy of strict construction of the

___

[7]Counsel for Bankers asserts that the objection was communicated to the county at the November 30 hearing on the motion to vacate—which, according to counsel, was still within the 90-day period. We cannot accept counsel's arithmetic. Bankers' time to seek discharge of forfeiture expired on August 8, 1989, which was the last day of an extension granted by the trial court on May 11. The 90-day period therefore commenced on August 9, 1989, and the time to enter summary judgment expired 90 days later, on November 6. The suggestion that

bail statutes is here outweighed by the policy mandating liberal construction of judgments, and that permitting trial courts to correct their records to speak the truth.

The order appealed from is reversed. The court is directed to enter an amended judgment against Bankers only. Each party will bear its own costs on appeal.

Smith, Acting P. J., and Peterson, J., concurred.

A petition for a rehearing was denied October 18, 1991.

---

Bankers was not named in the judgment was first voiced on November 30, 1989, at which time counsel for Bankers stated that she had first discovered this "[ir]regularity" on November 16—already 10 days too late for entry of a wholly new judgment.