Filed 10/29/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ELI G. BATTA et al., | B326589 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 19VECV01805) |
| THERESE R. HUNT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Shirley K. Watkins, Judge.  Reversed and remanded.

Yates Litigation and John R. Yates for Plaintiffs and Appellants.

Schorr Law, Zachary D. Schorr, and Stephanie C. Goldstein for Defendant and Appellant.

_____

This case involves a dispute over two adjacent parcels of property each containing a multi-unit apartment complex with on-site parking for their residents. The parties sought to determine their rights regarding a purported easement to use a disputed area on one parcel for additional space for tenant parking and trash dumpsters.

After a bench trial, the trial court entered a judgment in favor of plaintiffs, appellants, and cross-respondents Eli and Maha Batta (the Battas), finding they had established easement rights for additional parking and the dumpsters in the disputed area on the adjacent parcel, which was owned by defendant, respondent, and cross-appellant Therese Hunt. The trial court found the Battas established their easement rights under multiple theories, including by oral grant, by prescription, and by implication. While the trial court granted the parking and trash dumpster easement in favor of the Battas, it ordered that the easement would expire upon a bona fide sale of either property by the Battas or Hunt.

Both parties appealed. Hunt argues the trial court erred in granting the easement rights on various procedural and evidentiary grounds while the Battas argue the trial court abused its discretion in ruling the easement would expire upon a bona fide sale of either property. For the reasons stated below, we reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The history of the two properties and the Battas' complaint

Hunt owned two adjacent properties located at 6870 Woodley Avenue (the Hunt Property) and 6866 Woodley Avenue

(the Batta Property). The Hunt Property contains a four-unit apartment building and a separate carport to the west of the building. The Batta Property sits directly south of the Hunt Property and contains a nine-unit apartment building, which includes an overhang in the back of the building where tenants can park. The Batta Property also contains two additional parking spaces in the front of the building. A driveway runs east to west between the two apartment buildings.

The Battas purchased the Batta Property from Hunt in 1994. In 2019, the Battas sought a parking covenant from Hunt to prove to the City of Los Angeles that the Batta Property had sufficient available parking spaces. When Hunt refused to sign the covenant, the Battas brought this action, seeking an easement for parking as well as space to place their dumpsters, which had also been placed on the Hunt Property since the time of purchase.

The Battas' original complaint alleged causes of action for (1) quiet title to an easement by grant, (2) quiet title to an easement by prescription, (3) quiet title to an irrevocable license, and (4) breach of contract. They sought a determination as to whether the Batta Property tenants could use four parking spaces on the Hunt Property and whether the Battas could place a garbage dumpster on the Hunt Property adjacent to the four parking spaces. The Battas alleged their tenants had parked in the same locations on the Hunt Property since their purchase in 1994, and the dumpster had always been placed in the same location. The Battas alleged the disputed area was subject to an easement granted by Hunt. The Battas further alleged a description of the easement was contained in a real estate transfer disclosure statement (TDS) completed by Hunt after the

3

Battas purchased the Batta Property.  The Battas alleged they would not have purchased the property without an easement.

## II.    Bench trial

The trial court conducted a two-day bench trial.  The trial court heard testimony from the Battas, Hunt's daughter Cynthia Hunt, a land surveyor, and two current tenants of the Batta Property.  Since Hunt was unable to attend the trial due to health reasons, it admitted a video recording of Hunt's deposition.

During trial and after Hunt rested, Batta moved to conform to proof a cause of action for easement by implication.  Finding no prejudice to either party, the trial court granted the motion, and reopened evidence on this new theory to allow both sides to present additional testimony and evidence.  Thereafter, Hunt submitted the original site plan for the Batta Property, showing eight on-site parking spaces for what at the time was an eight-unit building.[1]

## III.   Findings of fact

The trial court issued its tentative statement of decision and directed the parties to file closing briefs and objections.  After issuing a series of tentative and final statements of decision, the trial court ruled in favor of the Battas.  The trial court found clear and convincing evidence supported the following facts.

Before the Battas purchased the Batta Property, Hunt owned the two adjacent parcels.  There was a four-unit apartment building on the Hunt Property and a nine-unit

---

[1]    When Hunt owned both properties, she subdivided one of the units in the Batta Property, adding a nonpermitted ninth unit.

4

apartment building on the Batta Property, although the Batta Property was only permitted for eight units.  There is a multi-car carport on the Hunt Property and a driveway in between both properties.

Between 1977 and 1994, while Hunt owned both properties, the tenants for the Batta Property parked their cars in three parking spaces behind the carport of the Hunt Property, and the Batta Property's trash and recycling dumpsters were stored near the back of the Hunt Property's carport.

The Battas purchased the Batta Property from Hunt in 1994.  Before the Battas purchased the property, all of the tenants in both apartment buildings parked wherever it was most convenient for them.  After the Battas purchased the property, their tenants continued to park on both the Hunt Property and the Batta Property.

Before selling the Batta Property, Hunt told the Battas she believed there was an easement on the Hunt Property, which gave the Batta Property rights to park and place a trash dumpster on the Hunt Property.  Although the purchase agreement did not mention an easement, Hunt described an easement in the TDS.  The TDS identified an easement on the Hunt Property for parking for two units of the Batta Property and space for the dumpster.  Hunt also verbally told the Battas there was an easement for parking and the dumpster.  Both Hunt and the Battas expected that the tenants in two of the units on the Batta Property would continue to use the three parking spaces behind the Hunt Property carport pursuant to the easement, and the parties operated under this assumption from the time of purchase until 2019.

After the sale, Hunt never told the Battas or their tenants that they could or could not continue to park on the Hunt Property. Hunt never really knew exactly where the property line was along the driveway between the two properties. The Battas paved the area behind the Hunt Property carport and also the driveway. Hunt knew about the paving but took no action to prevent it, remove it, or check the property line. The paved driveway covers areas on both proprieties; however, the vast majority sits on the Batta Property.

The Batta Property tenants used the driveway between the two apartment buildings to access the parking. The driveway was partially on the Hunt Property. The tenants needed this driveway to access the parking spaces, three of which were on the Hunt Property while the remainder were on the Batta Property. While the Batta Property had some additional on-site parking, the spaces were not realistically usable as some appeared to be too narrow or difficult to access without damaging the cars or supporting beams. Further, some of these additional spaces on the Batta Property had been used for almost 30 years as a common area for the tenants. Both sides expected that after the Battas purchased the property, the dumpster would continue to be stored against the back wall of the Hunt Property carport, which is located at the end of the parties' shared driveway.

The parties never recorded an easement. Instead, the parties continued to operate as if there was an easement from the time the Battas bought the Batta property in 1994 until 2019.

In support of its finding that the Battas had established an easement by prescription, the trial court found the Battas did not have permission to the use the disputed area on the Hunt

Property.  It found Hunt's testimony that she gave the Battas permission to use the land was not credible.

## IV.    Judgment

The trial court entered judgment in favor of the Battas. It found there was an easement by implication, by oral grant and by prescription in favor of the Batta Property for three parking spaces on the Hunt Property and space for a trash and recycling dumpsters.  It further found a nonexclusive driveway easement by implication, oral grant, and by prescription between the Batta Property and the Hunt Property to the extent the driveway overlaps the two properties in order for the Battas' tenants to access the parking spaces and dumpsters.  The trial court enjoined the Hunt Property from using the easement in a manner inconsistent with its findings.  The trial court further ordered that the easement did not run with the title of either property and that the easement would expire in the event of a good faith bona fide sale by the parties.

The trial court also ordered a nonexclusive easement by implication, by oral grant, and by prescription to the extent that the driveway was necessary access to the Batta Property. The trial court ordered this easement to run with title to both properties.

Both sides appealed.

### DISCUSSION

## I.    The trial court's findings were inconsistent

Hunt argues the judgment must be set aside and a new trial ordered on the grounds that the trial court's findings on each of the Battas' causes of action were inconsistent and irreconcilable.  Hunt first directs us to Battas' operative complaint, which alleged inconsistent theories on their right to

7

an easement.  The Battas alleged they were entitled to an easement by express grant, by implication, or by prescription. The first two of these causes of action require the Battas to show Hunt, either impliedly or expressly, agreed to grant the Battas an easement over the disputed area.  Meanwhile, the easement by prescription requires the trial court to find the Battas' right to use the disputed area was hostile and adverse to Hunt's interest, i.e., without Hunt's permission.  Since the trial court found the Battas met their burden under all three theories, it necessarily found that Hunt impliedly or expressly granted the Battas an easement while also finding Hunt never granted the Battas permission to use the disputed area.  Hunt asserts these findings are fatally inconsistent since Hunt could not both agree to grant the Battas an easement while also not giving them permission to use the disputed area.  As explained further below, we conclude these inconsistent findings require reversal.

### A.    Law governing inconsistent findings

A plaintiff may plead inconsistent causes of action. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1224.)  "When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations." (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.)  This doubt can arise when plaintiffs are certain of their legal rights but unsure about some of the ultimate facts or when plaintiffs are reasonably certain of the facts but are unsure about their legal rights.  (See *Gutirrez v. Southern Pac. Co.* (1959) 174 Cal.App.2d 866, 873.)  To accommodate these uncertainties, plaintiffs can generally plead "alternative factual allegations relying on

8

alternative legal theories." (*Williams v. Southern California Gas Co.* (2009) 176 Cal.App.4th 591, 598.)

Given that alternative legal theories may be pled, "it is not proper for the judge to force upon the plaintiff an election between those causes which he has a right to plead." (*Tanforan v. Tanforan* (1916) 173 Cal. 270, 274.) "Plaintiff is entitled to introduce his evidence upon each and all of these causes of action, and the election, or in other words the decision as to which of them is sustained, is, after the taking of all the evidence, a matter for the judge or the jury." (*Ibid.*)

However, where the plaintiff has not made an election, it is "the duty of the trial court . . . , upon the close of the evidence, to decide which of the antagonistic causes of action ha[ve] been sustained, and in so deciding the court [i]s required to take as true the averments in the complaint which bore most strongly against the pleader, and which were sustained by proofs either in the form of evidence or admissions of the pleadings." (*Beatty v. Pacific States Savings & Loan Co.* (1935) 4 Cal.App.2d 692, 697.) If the judgment is based on irreconcilable contradictory findings, the judgment must be reversed. (*Id.* at p. 699.)

## B.    Law of easements

" 'An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land. [Citations.] [¶] An easement creates a nonpossessory right to enter and use land in another's possession and obligates the possessor not to interfere with the uses authorized by the easement.' " (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1053–1054 (*Main Street*).) Relevant here, easements may be created by an express grant, an implied grant, or by prescription. (*Ibid.*)

An express grant of an easement may be created by an executed oral agreement. (*Rubio Canon Land & Water Ass'n v. Everett* (1908) 154 Cal. 29, 32–35; *Churchill v. Russell* (1905) 148 Cal. 1, 2–4; *Wilkes v. Brady* (1927) 84 Cal.App. 365, 368 (*Wilkes*).) Courts will create an easement by executed oral agreement where a seller orally agrees that the buyer will have an easement over the seller's property, but fails to convey it expressly by the deed and where the buyer uses and improves the easement and performs the contract. (*Wilkes*, at p. 368.)

An implied easement will be found where the following conditions exist: (1) " 'the owner of property conveys or transfers a portion of that property to another' "; (2) " 'the owner's prior existing use of the property was of a nature that the parties must have intended or believed that the use would continue; meaning that the existing use must either have been known to the grantor and the grantee, or have been so obviously and apparently permanent that the parties should have known of the use' "; and (3) " 'the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement.' " (*Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1420 (*Thorstrom*).)

A prescriptive easement will be found where the party seeking the easement proves use of the property for the statutory period of five years and where the use has been " '(1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right.' " (*Main Street, supra*, 194 Cal.App.4th at p. 1054.) In other words, "[a]n easement acquired by prescription is one acquired by adverse use for a certain period." (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1092.) " 'Adverse use' means . . . that the claimant's use of the property was made without the explicit or implicit permission of

the landowner." (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.)  This requirement " ' "ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so." ' " (*Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 726.)

### C.  The trial court's findings supporting Hunt's express or implied grant of an easement were inconsistent with its finding that Hunt did not grant the Battas permission to use her property

Here, the evidence the trial court relied on to rule in favor of the Battas on their claims for easements by implication and oral grant establish that the Battas' use of the Hunt Property was not adverse.  The trial court found that the Hunt's statements to the Battas prior to the purchase and subsequently the TDS constituted an oral grant of an easement.  It also found that the parties expected that the tenants would continue to park their cars on the Hunt Property as if there was an easement at the time of purchase.  In other words, the trial court's findings reflect that the Battas' use of the Hunt Property was permissive. On the other hand, in finding that the Battas established a prescriptive easement over Hunt's Property, it concluded that Hunt did not give permission for the Battas to use her property. In sum, the trial court found there was an express or implied agreement but no permission.

These findings are inherently conflicting, irreconcilable, and, as explained in more detail below, require reversal of the judgment.

11

## II. We cannot modify the judgment and affirm as modified

The Battas seem to concede that the trial court made inconsistent findings. However, the Battas argue we should modify the judgment and affirm since it is apparent the trial court intended to grant easement rights over the Hunt Property and the Battas established those rights either by implication or oral grant. We find modification and affirmance would be inappropriate here.

"The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) " 'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." ' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.) We liberally construe findings of fact to support the judgment. (*Ibid.*)

"The meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally. [Citations.] ' "[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention." ' [Citations.] ' "No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided." ' " (*People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76 (*Landon*).)

"Where an ambiguity exists, the court may examine the entire record to determine the judgment's scope and effect.

12

[Citations.] The court may also ' "refer to the circumstances surrounding the making of the order or judgment, [and] to the condition of the cause in which it was entered." ' [Citations.] Subsequent actions by the rendering judge may be considered as bearing upon the judgment's intended meaning and effect." (*Landon*, *supra*, 234 Cal.App.3d at p. 76.)

Here, the Battas argue they sufficiently established their rights to an easement by implication and oral grant; therefore, we should affirm the judgment as modified because the judgment is correct on at least one of these theories. In examining these remaining theories, we find that neither is sufficient to affirm the judgment.

### A. The Battas did not prove an easement by oral grant

The Battas argue the evidence was sufficient to support an easement by oral grant. We disagree.

While easements must generally be conveyed in writing, an executed oral agreement will convey title to an easement. (*Wilkes*, *supra*, 84 Cal.App. at p. 369.) Thus, although an easement is an interest in real property and generally must be agreed to in writing, an oral agreement to grant an easement will be enforced where the grantee improves the easement and otherwise performs under the terms of the agreement. (*Id.* at p. 368.)

Here, the evidence relied on by the trial court to find an easement by oral grant was Hunt's statements during the sales process and prior to purchase that there was an easement, and Hunt's statement in the TDS where she described an easement for parking and trash bins. Hunt argues this evidence was insufficient to create an oral grant because Hunt's statements

13

during the sales process and before the sale could not modify the purchase agreement under the parol evidence rule, and the TDS was insufficient to constitute a separate agreement to grant an easement.  We agree with Hunt.

### 1. Hunt's statements prior to the sale were barred by the parol evidence rule

"Application of the parol evidence rule to exclude a collateral oral agreement raises a question of law to be determined by the court.  Upon appellate review, the court is not bound by the trial court's determination and may consider the issue de novo.  Application of the rule involves a two-part analysis.  First, was the writing intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements?  Second, is the agreement susceptible of the meaning contended for by the party offering the evidence?  Put another way, if a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.  [Citation.]  Thus, parol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous.  Parol evidence cannot be admitted to show intention independent of an unambiguous written instrument." (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14–15.)  "When the parties to a written contract have agreed to it as an 'integration'—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms." (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225.)

14

Here, the parties do not dispute that the purchase agreement contained an integration clause. Nor do they dispute that the purchase agreement makes no mention of an easement. Further, the Battas do not argue that any of the purchase agreement's terms are reasonably susceptible to their interpretation or that the terms are ambiguous such that parol evidence is necessary. Therefore, Hunt's statements during the sales process that she was granting an easement in favor of the Batta Property constituted parol evidence that was inadmissible to vary the terms of the purchase agreement.

The Battas respond that the parol evidence rule does not apply because the TDS constituted a separate agreement executed after the purchase agreement and otherwise met the legal requirements for a grant of easement. In arguing the TDS met all the legal requirements for a grant of an easement, the Battas assert the TDS is signed by Hunt as the grantor and the TDS's description of the easement, combined with the evidence of the tenants' continued use, was sufficient evidence of the easement's location and scope. We disagree.

We find the TDS was insufficient to modify the original purchase agreement and grant easement rights to the Battas. As Hunt correctly argues, the TDS was merely informational and was signed by Hunt to comply with her disclosure obligations under Civil Code section 1102 to put the Battas on notice of any existing conditions on the property. Hunt's signature did not convert the TDS from a disclosure statement to a binding contract or offer creating easement rights. Rather, Hunt's signature reflects her statement that the information in the TDS was true and correct, nothing more. Similarly, the Battas' signature simply reflects that they received the document.

15

As Hunt points out, to construe the TDS in the manner asserted by the Battas would allow any representations in a disclosure form to become vested rights even in those situations where the right does not exist or may not have been subject to a separate agreement. Further, to the extent the Battas argue the TDS modified the purchase agreement, there is no indication that any further agreement, oral or otherwise, was ever executed to constitute a valid modification of the original purchase agreement.

Accordingly, we find the trial court's finding that the Battas established their right to an easement by oral grant was not supported by the evidence.

2. **The trial court abused its discretion in allowing the Battas to amend their complaint to add a cause of action for easement by implication without allowing Hunt the opportunity to rebut the Battas' evidence that the easement was reasonably necessary**

Having found the trial court's finding that the Battas proved the existence of an easement by oral grant was not supported by the evidence, we turn to the Battas' remaining theory of relief for an implied easement. While the record shows that the Battas established their right to an implied easement and the trial court's findings were supported by the evidence, we nonetheless find the judgment on this theory should be reversed as well. This is because we conclude the trial court abused its discretion by allowing the Battas to amend their complaint to add this new theory as Hunt did not have a sufficient opportunity to marshal evidence in response.

"[T]he allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused. [Citations.] Such amendments have been allowed with great liberality 'and no abuse of discretion is shown *[u]nless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced.'* " (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.)

" 'The cases on amending pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin: If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. If the same set of facts supports merely a different theory—for example, an easement as opposed to a fee—no prejudice can result.' [Citation.] 'The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded.' " (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 910.)

As stated above, one of the elements to establish an implied easement is that " 'the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement.' " (*Thorstrom*, *supra*, 196 Cal.App.4th at p. 1420.) "The law does not require that such easement be absolutely necessary; it is sufficient if the

17

easement is reasonably necessary for the beneficial enjoyment of the property." (*McCarty v. Walton* (1963) 212 Cal.App.2d 39, 43.) One consideration in whether an easement is reasonably necessary is whether the party claiming the easement can, at reasonable cost, create a substitute on the party's own estate. (*Leonard v. Haydon* (1980) 110 Cal.App.3d 263, 273.)

Hunt argues the trial court abused its discretion when it granted the Battas leave to amend to add an implied easement claim, as she did not have an opportunity to conduct any discovery related to whether the Battas could show whether the easement was reasonably necessary.

Hunt argues, had she known earlier that the Battas intended to pursue an easement by implication, she would have retained experts, deposed someone from the Los Angeles Department of Building and Safety (LADBS), and deposed any third parties that the Battas consulted with regarding parking on the Batta Property. She also would have conducted discovery regarding whether the Battas attempted to determine if they could create alternative parking arrangements on their own property at a reasonable cost. Further, Hunt would have introduced a copy of the site plan dated January 9, 2021, with handwritten comments from a LADBS reviewer, which stated that all eight required parking spaces were provided on site. Hunt claims she was unable to do any of these things or call any witnesses to conclusively show that the Battas could not satisfy any purported parking requirements with off-site parking and that in fact, the Battas are probably required to reconfigure their own property to create on-site parking.

The Battas argue these claims fail to show prejudice. First, the Battas argue they had the burden of proof on the element of

18

"reasonable necessity"; therefore Hunt was not prejudiced by the absence of discovery on this point. However, as Hunt correctly points out, even if the Battas initially had the burden of proof, Hunt was entitled to offer evidence to show the Battas had not met that burden or at least rebut the evidence presented by the Battas. Second, the Battas argue Hunt's trial counsel established through the Battas' testimony that the Battas told their tenants to quit using three parking spaces under the building because there were constant problems with cars hitting the support beams and damaging them. However, this does not address the fundamental problem with allowing the late amendment, which deprived Hunt of the opportunity to explore the potential cost to create alternative parking arrangements on the Batta Property. Third, the Battas argue any prejudice was cured when the trial court granted the Battas' motion to amend and allowed additional evidence, which included the original site plan for the Batta Property, showing eight on-site parking spaces for what at the time was an eight unit building. While the trial court's allowance of additional evidence certainly cured some of the prejudice as Hunt was able to introduce the Batta Property's original site plan, we find Hunt has sufficiently identified additional evidence that could have been offered regarding whether the easement was reasonably necessary.

Given these issues, the trial court should have suspended proceedings and reopened discovery to allow Hunt to marshal additional evidence, if any.

Since we conclude that the trial court's findings on whether Hunt granted the Battas either an implied easement or an easement by prescription are fundamentally inconsistent, and the Battas failed to prove their claim for an easement by oral grant,

19

we find it impossible to modify the judgment and affirm as modified.

In light of our reversal, we find it unnecessary to consider the parties' additional arguments.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings not inconsistent with this opinion. Hunt shall recover her costs on appeal.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.